UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | } | |
| Jimmy W. Cline and | } | CASE NO. 06-41597-JJR-13 |
| Kimberly M. Cline, | } | |
| Debtors. | } | CHAPTER: 13 |

| | | |
|---|---|---|
| Jimmy W. Cline and | } | |
| Kimberly M. Cline, | } | |
| Plaintiffs, | } | ADV. P. NO.: 07-40030-JJR |
| v. | } | |
| Deutsche Bank National Trust Co., | } | |
| as trustee of Ameriquest Mortgage | } | |
| Securities, Inc., | } | |
| Defendants. | } | |

**MEMORANDUM OPINION**

**Jurisdiction**

      This matter came before the Court for consideration of the Chapter 13 Standing Trustee's (the "Trustee") Motion to Dismiss Case. At the same time, on the Court's own motion, a status conference was held in the above adversary proceeding pursuant to Section 105(d)(1) of the Bankruptcy Code.[1] The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and

---

[1] 11 U.S.C. § 101 *et seq*, and herein referred as the "Code." Unless a contrary designation is indicated, the term "Section" when used herein shall be a reference to a section or subsection of the Code.

1

1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); therefore, the Court has authority to enter a final order. In compliance with Rule 7052(a) of the Federal Rules of Bankruptcy Procedure,[2] the following shall constitute the Court's findings of fact and conclusions of law.

### Background and Findings of Fact

Jimmy and Kimberly Cline (the "Debtors") commenced this chapter 13 case on October 31, 2006. This is debtor Kimberly Cline's seventh bankruptcy case and co-debtor Jimmy Cline's fifth case. The current case was their second bankruptcy case pending within a year, and pursuant to Section 362(c)(3), they filed a motion to extend the automatic stay as to all creditors. Their most recent prior case (case # 05-44561) had been dismissed on September 16, 2006, because they failed to make payments to the Chapter 13 Trustee (the "Trustee") as required under their confirmed plan. Thus, pursuant to Section 362(c)(3) the automatic stay would have expired on the 30th day after filing the present case if the Court did not grant an extension of the stay. A hearing on the motion to extend the stay was scheduled for November 30, 2006, and creditor Ameriquest Mortgage Company ("Ameriquest") filed an objection to the motion.[3] Ameriquest objected to an extension of the stay due to the Debtors' successive bankruptcy filings in 2004 and 2005, which had thwarted Ameriquest's attempts to foreclose its mortgage on the Debtors' principal residence. The *original*

---

[2] A Rule of the Federal Rules of Bankruptcy Procedure is referred to or cited herein as a "Rule."

[3] On the day after Ameriquest filed its objection to extension of the automatic stay, it filed another objection with an alternative motion to lift stay in the event the stay was extended. Ameriquest withdrew its motion to lift stay after the Court entered its November 30, 2006 Order discussed *infra*.

2

Case 07-40030-JJR    Doc 17    Filed 02/11/08    Entered 02/11/08 10:16:53    Desc Main
Document    Page 2 of 18

amount of the mortgage was $56,625.00, and the Debtors' prepetition arrearage was $23,604.59. As of November 2006, Ameriquest alleged the total mortgage debt was $80,191.06, apparently because of the accrual of interest and addition of collection expenses. Ameriquest and the Debtors agreed the value of the mortgaged property was only $62,281.98, leaving no equity in the real property. The Debtors' proposed chapter 13 plan listed the mortgage debt at $79,262.95, which included 30 months of arrearage totaling $16,000.00. In their plan, the Debtors proposed to pay Ameriquest the regular monthly mortgage installments of $617.55 each, plus $533.33 per month on the arrearage over a commitment period of 36 months. During the hearing, the Debtors admitted they understated the arrearage, which was actually closer to $24,000.00. The only other creditor to be paid under the plan was Finance America, which held a claim for $500.00 secured by a vacuum cleaner. The Debtors proposed paying nothing to unsecured creditors. Obviously, the proposed plan was filed to save the Debtors' home from imminent foreclosure, and for more prosaic reasons, to retain the vacuum cleaner.

At the hearing on the Debtors' motion to extend the stay, the Court heard testimony from the Debtors and a representative of Ameriquest, as well as arguments of counsel. Based on such evidence and arguments and the Debtors' history of filing multiple bankruptcy cases, the Court found the Debtors had failed to prove they would be able to afford the regular mortgage payments plus the arrearage owing to Ameriquest and thereby have a successful chapter 13 case. However, the Court found the case otherwise had been filed in good faith as to all creditors except Ameriquest, and the Debtors could be successful in chapter 13 if they were not burdened with this large mortgage debt. Accordingly, the Court entered its Order on November 30, 2006 extending the automatic stay to all creditors except Ameriquest. The Order further provided:

3

> The stay as it applies to Ameriquest will continue in effect until January 31, 2007, at which time it will terminate and Ameriquest will thereafter be entitled to exercise all of its in rem remedies with respect to the foreclosure of its mortgage against the Debtors' residence and any ejectment action following foreclosure. The automatic stay which might otherwise come into effect under any chapter of Title 11 of the U.S. Code, in any case commenced by either or both Debtors within 180 days from the date of this Order shall not be effective or otherwise apply to Ameriquest's mortgage or any ejectment action following foreclosure of such mortgage.
>
> The Court has delayed terminating the automatic stay in respect to the Ameriquest mortgage to allow the Debtors and Ameriquest time to possibly work out a refinance, or perhaps K. Cline will obtain employment that will provide sufficient additional income to entice Ameriquest to reconsider its foreclosure and acquiesce in a consensual chapter 13 plan that will pay the mortgage arrearages.

(Order Granting in Part, Denying in Part Motion to Extend Automatic Stay, dated November 30, 2006, doc # 31).[4]

Until now, nothing particularly unusual had occurred in the case; however, that changed. Although the stay was to terminate as to Ameriquest's mortgage on January 31, 2007, the Debtors filed an amended chapter 13 plan on January 12, 2007.[5] Under the amended plan, the Debtors increased Ameriquest's arrearage from 30 to 42 months, for a total amount due of $23,604.59 to be paid over a commitment period of 48 months along with the regular scheduled monthly installment. The total proposed monthly payment to Ameriquest, including the regular installment plus the

---

[4] To be candid, in addition to the reason stated in the November 30, 2006 Order for delaying the termination of the stay with regard to Ameriquest's mortgage, the Court was mindful of the calendar. Rather than risk a foreclosure of the Debtors' home during the Christmas season, the Court delayed the imminent event until after the first of year. Inasmuch as Ameriquest had already waited 42 months, a couple more months' delay posed little additional harm.

[5] The amended plan filed January 12, 2007 was actually the third plan filed by the Debtors. A second plan was filed on December 20, 2006, which increased the commitment period from 36 to 48 months and lowered the monthly payment to Finance America from $18.50 to $13.75; no change was made in the amount or to the proposed treatment of the Ameriquest mortgage debt in the second plan.

4

payment on the arrearage, was $1,179.56. Ameriquest did not file an objection to the amended plan or its confirmation, and as a routine matter, after notice to all creditors and parties in interest, including Ameriquest, the plan was confirmed on January 26, 2007. Neither the plan nor the confirmation order mentioned the November 30, 2006 Order or the continuation or termination of the automatic stay.

Ameriquest never filed a proof of claim in this case. Nonetheless, on March 12, 2007, counsel for the Debtors filed claim #10 for the Ameriquest mortgage debt pursuant to Section 501(c) and Rule 3004, and notice of the filing of such claim was sent to Ameriquest by the Clerk of the Court.

On March 28, 2007, Ameriquest served the Debtors with a notice of foreclosure. Shortly thereafter, the Debtors filed their Complaint, in which they alleged the notice of foreclosure was a violation of the order confirming their chapter 13 plan, which had proposed to pay Ameriquest's mortgage debt during the plan's commitment period. The Complaint alleged the Debtors "suffered mental anguish due to the continued collection efforts and harassment by [Ameriquest]," and it demanded actual and punitive damages in an unspecified amount, plus attorney's fees.[6] In its Answer, Ameriquest was incredulous; it contended that under the November 30, 2006 Order it had the right to proceed with foreclosure after January 31, 2007, accused the Debtors of acting in bad

---

[6] The Complaint identifies the defendant as Deutsche Bank National Trust Co., as Trustee of Ameriquest Mortgage Securities, Inc. The Court is treating the defendant named in the Complaint as one and same party in interest as Ameriquest. That is, the same party identified as the holder of the Debtors' mortgage in their confirmed plan; the same party named as the creditor in the proof of claim filed by Debtors' counsel; and the same party identified in the November 30, 2006 Order as objecting to an extension of the stay.

5

faith, and accused Debtors' counsel of unethical conduct.[7]

On June 7, 2007, the Trustee filed an objection to the claim filed by Debtors' counsel for the Ameriquest debt on the basis that Ameriquest had refunded payments tendered pursuant to the

---

[7] In its Answer, Ameriquest had the following to say regarding the conduct of the Debtors and their counsel:

> 5. Subsequent to the entering of the November 30 Order and in good faith, Ameriquest a Servicer for Deutsche Bank attempted to work out some solution with the Debtors but was unable to do so. As a result, it is Deutsche Bank's position that the stay lifted on January 31, 2007 by operation of the terms of the Order entered November 30, 2006.
>
> 6. Subsequent to the November 30 Order being entered and during the time that Deutsche Bank was negotiating with the Debtors in good faith, the Debtors by and through counsel attempted to circumvent this Court's November 30 Order by filing an Amended Plan, filing a Proof of Claim on behalf of Ameriquest and obtaining confirmation of said Amended Plan. Between the time of the entry of this Court's November 30, 2006 Order and January 31, 2007, the Debtors knew that Deutsche Bank's attempts to work out a resolution would fail, which resulted in their undertaking activity in bad faith to overcome the inevitable without being forthright with this Honorable Court, opposing counsel and the Creditor/Defendant Deutsche Bank.
>
> 7. Deutsche Bank contends that this egregious conduct is evidence of the Debtors' bad faith in the original filing of this bankruptcy case. Although this court found in its November 30 Order that the case was filed in good faith, that finding was only made with the understanding that the Ameriquest mortgage would not be part of the case. Deutsche Bank contends that the Debtors' activities are indicative of a plan set in motion from the beginning of this case and, thus, is bad faith in the original filing, which should result in a dismissal of the underlying bankruptcy case.
>
> 8. Deutsche Bank further specifically contends that Debtors' counsel created this scheme from the outset, failed to exhibit candor toward this Honorable Court, and failed to exhibit fairness to opposing counsel, which is tantamount to a violation of the Alabama Rules of Professional Conduct and as a result, is sanctionable.

6

confirmed plan. Ameriquest filed a Response to the Trustee's objection, in which it recited its belief the stay had been lifted under the Court's November 30, 2006 Order, emphasized the claim had been filed by Debtors' counsel and not by Ameriquest, and acknowledged an adversary proceeding had been filed disputing the stay had been lifted. The Trustee's objection was continued generally pending the outcome of the adversary proceeding.

Predictably, matters finally came to a head on November 2, 2007 when the Trustee filed a Motion to Dismiss Case for failure to make the plan payments. The Debtors were $5,240.00 delinquent on their plan payments, which increased to $6,550.00 by the date of the hearing. Counsel for Debtors, counsel for Ameriquest, and the Trustee were all present at the hearing on the Trustee's Motion to Dismiss and the status conference on the adversary proceeding. The Court stated it intended to grant the Trustee's Motion to Dismiss and expressed concern about the course of events orchestrated by the Debtors and their counsel following the November 30, 2006 Order. Debtors' counsel argued the adversary proceeding against Ameriquest was justified and supported under a tenet established by a case decided by another Northern District of Alabama Bankruptcy Judge. Counsel could not recall the style of the case; however, after some research it is apparent the case relied on by Debtors' counsel was *Green Tree Fin. Corp. v. Garrett (Matter of Garrett)*, 185 B.R. 620 (Bankr. N.D. Ala. 1995).

Before discussing *Garrett* and similar cases, the Court will explain what it considers inappropriate about the exploits of the Debtors and their counsel following the November 30, 2006 hearing on the Debtors' motion to extend the stay. As mentioned above, the Court's November 30, 2006 Order delayed termination of the stay under Section 362(c)(3) as to Ameriquest until January 31, 2007. Under the terms of that Order, neither the Debtors nor Ameriquest had an obligation to

7

negotiate and attempt to reach a settlement before the stay terminated. Thus Ameriquest had every right to believe that on January 31, 2007, it had the absolute right to proceed with foreclosure without seeking further relief from this Court. The Order stated in no uncertain terms the stay would terminate on January 31, 2007; the Debtors did not appeal, and the Order became final.

On the surface, there was nothing improper about the Debtors' filing an amended plan, which more accurately reflected the arrearage of Ameriquest's mortgage, or moving forward with confirmation of the plan on January 26, 2007. After all, the stay had not terminated at confirmation, and perhaps the Debtors and their counsel believed Ameriquest could be enticed to forego foreclosure and agree to payment under the terms of the plan. According to the Answer filed by Ameriquest in response to the Debtors' Complaint, there were serious settlement negotiations among the parties following the November 30, 2006 hearing. In any event, Ameriquest was not persuaded to forego foreclosure and did not agree to be paid under the plan. If there was ever any doubt, the Debtors and their counsel knew Ameriquest's intent when it refused to accept payments tendered by the Trustee and when it sent notice of foreclosure.

The Debtors argue the November 30, 2006 Order allowing the stay to terminate effective January 31, 2007 was usurped by the January 26, 2007 Order confirming the plan. The Debtors further contend Ameriquest should have objected to confirmation of a plan which provided for the payment of its mortgage, even though five days after confirmation the stay was predestined to terminate, thereby freeing Ameriquest to foreclose its mortgage. Ameriquest contends after the hearing on November 30, 2006, the battle over the issue of Ameriquest's right to foreclose its mortgage had been fought and lost by the Debtors; that issue had been fully litigated, ruled on by the Court, and the time for appeal had expired. All of the foregoing notwithstanding, what the Court

8

found objectionable was Debtors' counsel's filing an adversary proceeding seeking punitive damages against Ameriquest based the alleged harassment of, and mental anguish suffered by, the Debtors. If anyone was harassed and suffered mental anguish in this case, it was Ameriquest who had been repeatedly thwarted from foreclosing its mortgage even though the Debtors were in arrears for 3 1/2 years of payments. Debtors' counsel knew an adversary proceeding with those allegations would not be taken seriously. If he believed Ameriquest had forfeited its right to foreclosure by failing to object to confirmation of the plan, he should have sought a declaratory judgment on that issue, filed an adversary proceeding for an injunction against the foreclosure, or filed a motion for an order requiring Ameriquest to accept payments tendered by the Trustee pursuant to the plan. Rather than addressing the issue head-on, Debtors' counsel filed a complaint with exaggerated allegations claiming punitive damages for harassment and mental anguish.

Lawyers who routinely represent debtors in bankruptcy cases and some bankruptcy judges protest that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, commonly referred to as BAPCPA, was written almost entirely to benefit creditors. Whether or not those protestations have merit, cases like this one become a poster child for bankruptcy reform legislation.[8] Attorneys who represent debtors on a regular basis should discourage this type of hyperbole by their colleagues because it provides their opponents with examples of why additional amendments to the Code are needed to further restrict abusive conduct by debtors and their counsel. As a consequence

---

[8] The facts from this case that could be presented to Congress to support additional bankruptcy reform legislation are as follows: Kimberly Cline's seven and Jimmy Cline's five serial bankruptcy cases; default of 3 1/2 years in mortgage payments while Ameriquest was stayed from foreclosure; although stay relief was finally obtained, Ameriquest was nonetheless sued for harassment, mental anguish and punitive damages when it commenced foreclosure.

9

of such restrictions, it becomes more difficult and expensive for unfortunate and honest debtors who are not gaming the system to go through the bankruptcy process and achieve a much needed and deserved financial fresh start.

## Conclusions of Law

As mentioned, the Debtors and their counsel apparently relied on *Green Tree Financial Corp. v. Garrett*, *supra*, to support their position that after the Debtors' plan was confirmed on January 26, 2007, Ameriquest could no longer rely on the Court's pre-confirmation November 30, 2006 Order entered pursuant to Section 362(c)(3), which allowed the stay to terminate on January 31, 2007. The Debtors contend that because their confirmed plan provided for payment of the Ameriquest mortgage, Ameriquest was bound by Section 1327(a) to accept payments under the terms of the plan and could no longer proceed with foreclosure. Section 1327(a) provides, "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." Although *Garrett*, a pre-BAPCPA decision, is well reasoned and lends support to the Debtors' position, it is, nonetheless, distinguishable from the instant case.

In *Garrett*, the debtor filed a chapter 13 plan providing for the payment of a secured mobile home loan owing to Green Tree Financial. Before the plan was confirmed, Green Tree filed a motion to terminate the automatic stay, and the motion was granted. Thereafter, the debtor's plan was confirmed. Apparently neither the confirmed plan nor the confirmation order made any mention of the pre-confirmation termination of the stay in favor of Green Tree. More than four months after confirmation, Green Tree commenced an action in state court to repossess the mobile home, and the debtor removed the action to bankruptcy court. The bankruptcy court held, "the preconfirmation lift

10

stay order terminated the automatic stay under 11 U.S.C. § 362(a), but [did] not change the binding effect of an order of confirmation, or remove a claimholder from the provisions of a confirmed plan, unless the plan expressly preserve[d] the terms of the lift stay order." 185 B.R. at 623. As authority for its holding, the court cited *In re Simons*, 113 B.R. 942 (Bankr. W.D. Tex. 1990).[9] The court acknowledged *Simons* was distinguishable because it was a chapter 11 case, and "the effects of confirmation in a chapter 11 case are not the same as in a chapter 13 case." *Garrett*, 185 B.R. at 623. Nonetheless, the *Garrett* court "adopt[ed] the general rules regarding the impact a confirmation order has on a preconfirmation lift stay order which has not been acted upon by the parties under state law. The confirmation order establishes the rights between the debtor and creditor and supersedes the terms of the contract." *Id.* at 623-24.

---

[9] The court's ruling in *Simons* is novel, if not troubling. In *Simons,* a secured creditor and the debtors entered into an Agreed Lift Stay Order, the terms of which were incorporated in the debtors' plan. Other creditors objected to confirmation of the plan because it contained terms taken from the agreed order. The plan was amended to overcome the objection at the expense of the creditor who, apparently in good faith, had entered into the pre-confirmation agreed order. The court held its confirmation order would supersede the Agreed Lift Stay Order. The court explained its decision by stating, "The fact that the Debtors are not living up to their agreement as embodied in the Agreed Lift Stay Order is not bad faith per se. The Debtors had a valid reason for changing the Plan. The treatment proposed is fair and equitable. This may not be the case in all situations where an agreement has been struck and then is subsequently breached. However, it is the case here." 113 B.R. 949. Perhaps *Simons* should be cited as authority by defendants who face civil damages for breach of contract. An agreed order is nothing more than a contract between parties in a judicial proceeding and approved by the court usually after notice to other parties and an opportunity to be heard. Why should the terms of an agreed order be disregarded when it serves the interests of one of the signatories and not the other? The purpose of any agreement is to create a binding and enforceable obligation which can be relied on by the parties. Parties often enter into contracts, including agreed orders, that at the time appear to be in their best interest, only to later find that was not the case or their circumstances change. A court who oversees the entry of an agreed order should not later provide cover for its breach by supplying an excuse disguised as a superceding order. The debtors made their bed with the agreed order and should have been required to sleep in it.

In *Garrett*, the stay was apparently terminated for cause pursuant to Section 362(d), after the court found the creditor was not adequately protected. In the instant case, the stay was allowed to terminate pursuant to Section 362(c)(3), after the Court found the Debtors' case could not be successful if they were burdened with the large mortgage debt held by Ameriquest. Furthermore in the instant case, the Court's order terminated the stay after plan confirmation, not pre-confirmation as in *Garrett*.[10]

Other courts have followed *Garrett*,[11] and some post-BAPCPA cases have extended the principle underlying *Garrrett* to Section 362(c)(3).[12] That principle can be simply stated: Under

---

[10] If the stay had terminated pre-confirmation in the instant case, that fact would not have changed the Court's opinion as expressed herein.

[11] *Impact Funding Corp. v. Simpson (In re Simpson)*, 240 B.R. 559 (B.A.P. 8th Cir. 1999) (deed of trust holder sought to exercise rights in debtor's property after foreclosure, but bankruptcy court found debtor still had rights in the property due to holder's failure to record foreclosure deed before stay went into effect; while appeal was pending, plan was confirmed and proposed to cure arrearage on deed of trust; appeal was moot because deed of trust holder failed to appeal confirmation order); *In re Moffitt*, 2007 WL 1118287 (Bankr. N.D. Tex. Apr. 12, 2007) (finding the confirmation order "trumps" or is res judicata over the lift stay order); *In re Minzler*, 158 B.R. 720 (Bankr. S.D. Ohio 1993) (even when a motion for relief is filed before confirmation, unless it pertains to post-confirmation failure to make payments, the motion is untimely due to the confirmed plan).

[12] *Kurtzahn v. The Sheriff of Benton County, Minn. (In re Kurtzahn)*, 342 B.R. 581, 585 (Bankr. D. Minn. 2006) (where the stay terminated pursuant to Section 362(c)(3) but debtor later obtained plan confirmation, court held, "[c]onfirmation thus bound [creditor] to . . . the plan's terms, and . . . any previously-effective termination of the stay . . . did not affect that."); *In re Fleming*, 349 B.R. 444 (Bankr. D.S.C. 2006) (automatic stay was not extended, but debtor could still achieve confirmation and creditors may be prevented from exercising state law rights even in the absence of the automatic stay, unless the confirmed plan provided otherwise); *In re Murphy*, 346 B.R. 79 (Bankr. S.D.N.Y. 2006) (termination of stay under Section 362(c) does not automatically relieve all creditors, for all purposes, from the binding effect of a subsequently confirmed plan).

12

Section 1327(a), the terms of a confirmed plan control the debtor-creditor relationship, notwithstanding any pre-confirmation stay relief granted to a creditor. If *Garrett* applies to a debtor who has lost stay protection under Section 362(c)(3) but who ultimately obtains confirmation of a plan that provides for the payment of a creditor who was not stayed pre-confirmation, the absence of stay protection becomes irrelevant upon confirmation. Instead of being able to exercise its remedies, such as foreclosure and ejectment, the creditor is now required to accept plan payments, and the collateral will remain under the control of the debtor. Such a creditor has two choices: Exercise its remedies before a plan is confirmed, which may be difficult given the short time now provided for confirmation,[13] or actively oppose confirmation of any plan that does not recognize a continuation of the stay relief and the creditor's right to exercise its remedies post-confirmation. Being aware that its opinion expressed in this case may be a minority of one, this Court will not follow those courts which have extended the principle underlying *Garrett* to Section 362(c)(3).

When Congress enacted BAPCPA and added Sections 362(c)(3) and (4) to the Code, it did so to make serial bankruptcy filings less attractive to debtors who were perceived as abusing the bankruptcy process. Before BAPCPA, repeat filers who had lost automatic stay protection under Section 362(d) could dismiss their case, file a new case, and regain stay protection time and time again. Now under Section 362(c)(3), if the debtor has had one prior case dismissed within the preceding one-year period, the stay expires after 30 days unless the court affirmatively continues the stay; under Section 362(c)(4), if the debtor has had more than one case dismissed within the preceding one-year period, no stay is ever in effect unless the court orders otherwise. This Court is

---

[13] The hearing on confirmation of a plan may be held not earlier than 20 days nor later than 45 days after the meeting of creditors. Section 1324(b).

not convinced Congress intended for these same repeat debtors to have another opportunity for *de facto* stay protection under Section 1327(a), after they failed to retain or receive stay protection under Sections 362(c)(3) or (4). In other words, Section 1327(a) should not be construed as elevating plan confirmation to super-priority status, providing relief tantamount to the automatic stay after *bona fide* stay protection was lost or never obtained under Sections 362(c)(3) and (4).

A plausible argument can be made that a creditor should monitor its debtor's case, and if a plan is proposed that does not recognize a pre-confirmation order denying an extension or imposition of the stay under Sections 362(c)(3) or (4), the creditor must oppose confirmation.[14] This Court believes a stronger argument is that once a court finds there is no sufficient reason to justify an extension or imposition of the stay under Sections 362(c)(3) or (4), confirmation of a plan should neither change that finding nor interfere with the creditor's uninterrupted right to exercise its remedies post-confirmation without seeking additional relief from the court. By not monitoring the debtor's case, the creditor is not foolishly letting down its guard, rather it is justifiably relying on a prior and final order of the court. Additionally, if the door is left open for a debtor to replace his lost stay protection with similar relief upon confirmation, a creditor cannot commence exercising remedies and incurring associated expenses with any degree of confidence, knowing it may be stopped in midstream if the court refuses to recognize the post-petition efficacy of the stay relief.

*In re Garrett*, 357 B.R. 128 (Bankr. C.D. Ill. 2006) (the "Illinois *Garrett*," not to be confused with the "Alabama *Garrett*," *supra*) lends considerable support to the minority position being taken

---

[14] *See, e.g.*, *Matter of Pence*, 905 F.2d 1107, 1109 (7th Cir. 1990) (a creditor is "not entitled to stick its head in the sand and pretend it would not lose any rights by not participating in the [bankruptcy] proceedings.").

14

by this Court. In Illinois *Garrett*, the debtors filed a motion for an extension of the stay under Section 362(c)(3). Although the debtors filed their motion 19 days after commencing their chapter 13 case, they failed to timely schedule a hearing on their motion so it could be heard within the 30 days required by Section 362(c)(3)(B). *Id*. at 131. The court denied the debtors' motion because more than 30 days had lapsed before the hearing on the motion, and the court also refused to consider an extension of the stay on equitable grounds under Section 105. *Id*. Having failed to obtain an extension of the stay, the debtors argued "that their Chapter 13 plan . . . was confirmed without objection and that, as such, Creditor, Farmers-Merchants National Bank, is bound by the terms of the confirmed plan and that the confirmed plan has the effect of *res judicata* as to the issue of good faith." *Id*. at 132. The court rejected this argument and stated:

> While there is no dispute that . . . [the] Bank did not file an objection to the plan . . . , the Court finds that the confirmed plan is not dispositive of the automatic stay issue now before the Court. The Court notes that there is nothing in the confirmation order which addresses the continuation or termination of the automatic stay as to . . . [the] Bank. The stay issue remained pending despite confirmation of the . . . plan, and the Court finds that it was appropriate for the Bank to rely on its pending objection to the continuation of the automatic stay to preserve that issue despite confirmation of the . . . plan. In effect, the Court finds that confirmation of the . . . plan was merely binding upon the Bank as to the treatment of its claim in the event of a finding by the Court that the automatic stay should be continued as to the Bank.

*Id*.

Like the Debtors in the instant case, the debtors in Illinois *Garrett* failed to obtain an order extending the stay under Section 362(c)(3), but they were successful in having their plan confirmed without any objection by the creditor who actively opposed their motion for an extension. Similarly, neither the confirmation order in Illinois *Garrett* nor confirmation order in the instant case mentioned the continuation or termination of the automatic stay. Although the Illinois *Garrett* court

15

seemed to place some significance on the bank's objection to the extension not having been ruled on until after confirmation, it is difficult to conclude that the court's decision would have been different if the bank's objection to the extension had been sustained before confirmation.

Accordingly, this Court holds Section 1327(a) does not implicitly or otherwise overrule a pre-confirmation order allowing the stay to expire under Section 362(c)(3). The expiration or termination of the stay pursuant to Section 362(c)(3) transcends confirmation, and notwithstanding Section 1327(a) a creditor may continue to rely on such expiration or termination after confirmation when exercising its contractual and state court remedies. While not at issue in this case, a logical extrapolation of the foregoing holding would be if the stay never was in effect under Section 362(c)(4), confirmation of a plan should not have the effect of providing relief tantamount to the automatic stay under Section 1327(a).[15] However, if stay relief is not in effect with respect to a particular creditor when a plan is confirmed, but that creditor elects to accept and retain payments tendered under a confirmed plan, then the creditor should be estopped from denying the binding and superceding effects of confirmation. That is not what happened in the instant case. Ameriquest returned the mortgage payments to the trustee, thus timely demonstrating its belief that the stay was not in effect and that it was not required to accept and retain payments under the plan in substitution

---

[15] In this Court, chapter 13 plan confirmation is a routine procedure and will remain so. It is impractical, if not impossible, for this Court to fly-speck each chapter 13 plan before entering a confirmation order. Accordingly, if a debtor intends a plan to impose a stay or have a similar result on a creditor after confirmation when the stay was not in effect pre-confirmation, merely providing for the same in the proposed plan will not be sufficient, and confirmation of the plan will not result in reinstatement of the stay or similar relief. If such relief is sought, it must be requested in a motion separate from the plan and served on all creditors to be effected. Such a motion will either be granted or denied in an order separate from the confirmation order.

16

of the post-confirmation stay relief granted under the November 30, 2006 Order.

ORDER:

For the reasons stated above, it is ORDERED that the Trustee's Motion to Dismiss (doc # 100) is GRANTED, and the Debtors' bankruptcy case is hereby DISMISSED;

It is further ORDERED that, in light of the multiple bankruptcy cases filed by the Debtors, and the Court's finding that the Debtors cannot successfully restructure or adjust their Ameriquest mortgage debt through any relief available under the Code without unreasonably jeopardizing Ameriquest's mortgage interest and leaving it without adequate protection, the automatic stay otherwise imposed under Section 362(a), in any case hereafter filed by either or both of the Debtors under any chapter of the Code within 180 days from the date hereof, shall not go into effect with respect to the mortgage and debt secured thereby that are the subject matter of this Opinion and Order;[16] and

It is further ORDERED that the Debtors' adversary proceeding (AP No. 07-40030) against Ameriquest is hereby dismissed.[17] The clerk is directed to close this adversary proceeding at the

---

[16] It appears the mortgage at issue is dated April 23, 2002 and was in the original principal amount of $56,625; it is presently held or serviced by Ameriquest Mortgage Company and/or Deutsche Bank National Trust Co., as trustee of Ameriquest Mortgage Securities, Inc. The mortgage encumbers Lots 1, 2, 3, 4, 75, 76, 77 and 78, in Block "A," Meadowlawn Addition Number 3 to Attalla, Plat Book "E", page 245, Probate Office of Etowah County, Alabama.

[17] The Court is treating the final paragraph of Ameriquest's Answer filed in the adversary proceeding as a motion to dismiss the Debtors' Complaint. In that paragraph, Ameriquest "requests that this adversarial proceeding and the underlying bankruptcy case be dismissed in their entirety with the imposition of the requested relief set forth above, including appropriate sanctions and the awarding of attorney fees and costs to . . . [Ameriquest] for defense of this action." Although this Court finds the claims made by the Debtors and their counsel in the Complaint were unreasonable and excessive (e.g. punitive damages for harassment and mental

17

expiration of the time for appeal and no appeal having been taken.

       This Opinion and Order shall constitute a judgment entered pursuant to Rule 9021.

       Dated: February 11, 2008

/s/ James J. Robinson  
JAMES J. ROBINSON  
United States Bankruptcy Judge

---

anguish), in light of the Alabama *Garrett* decision, an award of sanctions (other than the 180 day bar on automatic stay protection in any subsequent case) and attorney's fees is not appropriate.

18